IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**LASZLO KORPAS,**

    **Plaintiff,**

    v.

**REPUBLIC OF HUNGARY,**

    **Defendant.**

Case No. 24-2087-JAR-ADM

## MEMORANDUM AND ORDER

Before the Court is Plaintiff Laszlo Korpas's Motion for Default Judgment (Doc. 7), and Motion for Leave to File Exhibits Conventionally (Doc. 10). After screening the motion and operative Amended Complaint, this Court issued to Plaintiff an Order to Show Cause ("OSC") in writing why this case should not be dismissed for lack of subject matter jurisdiction.[1] Plaintiff filed his response to the Court's OSC on November 4, 2024.[2] As described more fully below, the Court lacks subject matter jurisdiction over this action. Therefore, Plaintiff's pending motion for default judgment must be denied, and his motion to file exhibits conventionally is moot.

**I.  Background**

Plaintiff Laszlo Korpas, who proceeds pro se, alleges in his Amended Complaint claims against the Republic of Hungary, a foreign state.[3] Specifically, he alleges that "[o]n June 26, 2017, the Hungarian state's violent union the Hungarian police, took my son away illegally. . . . [T]hey had no jurisdiction over my son. My human rights were severely violated."[4] He requests

---

[1] Doc. 12.

[2] Doc. 13.

[3] Doc. 3.

[4] *Id.* at 3.

a jury trial, and seeks $250 million in damages, the return of his son, and a judgment that Hungary's actions in taking Plaintiff's son were unlawful.

Plaintiff filed several exhibits in support of the Amended Complaint and in support of his motion for default judgment.[5] Those exhibits set forth additional facts that form the basis for his claims. Plaintiff alleges that his son's mother left him in the hospital after his birth and he was "brought up by the guardianship office," but eventually returned to Plaintiff.[6] Plaintiff then moved to Romania and attempted to terminate his Hungarian residence, but sometimes visited Hungary for short periods of time. On one of these trips to Hungary, "the guardianship office restarted the child protection proceedings, unlawfully due to lack of jurisdiction."[7] The guardianship office required a health examination for Plaintiff's son. Plaintiff cooperated, and the child was determined to be healthy. Thereafter, Plaintiff moved to Germany with his son, but two weeks later, the police called him and advised that there was an Interpol warrant for his arrest and his son was considered a missing person. Plaintiff returned to Hungary the next day, and the guardian's office removed Plaintiff's son on the basis that he had not taken the child to a doctor and "hid the son from the nurse."[8] Plaintiff unsuccessfully challenged this custody decision in the Hungarian courts. He then moved to the United States, hoping that "the legal system still works in America."[9] Plaintiff alleges that while in Hungarian custody, his son was neglected and became ill, and that he has been held captive for seven years. He seeks monetary compensation and the return of his son.

---

[5] Docs. 3-1, 3-2, 3-3, 8, 9, 11.

[6] Doc. 3-1 at 1.

[7] *Id.*

[8] *Id.* at 2.

[9] *Id.*

**II.     Standards**

Federal courts are courts of limited jurisdiction and must therefore have a statutory or constitutional basis for exercising jurisdiction.[10] The party seeking to invoke federal subject matter jurisdiction has the burden to establish that jurisdiction is proper,[11] and "[m]ere conclusory allegations of jurisdiction are not enough."[12] The Court has an independent duty to assure itself of its own subject matter jurisdiction and can dismiss at any time sua sponte for lack of subject matter jurisdiction.[13]

28 U.S.C. § 1330 governs the Court's jurisdiction over foreign states:

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

The Foreign Sovereign Immunities Act ("FSIA") also governs this Court's jurisdiction. Under that statute, "[s]ubject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."[14] "Section 1330 thus 'works in tandem' with the FSIA's substantive provisions: Section 1604 bars state and federal courts from exercising jurisdiction when a foreign state is entitled to immunity, and section 1330 confers jurisdiction on federal district courts only if one

---

[10] *United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995).

[11] *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[12] *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999) (citation omitted).

[13] *See, e.g.*, *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1093 (10th Cir. 2017); Fed. R. Civ. P. 12(h)(3).

[14] 28 U.S.C. § 1604.

of the exceptions to immunity applies."[15] If no FSIA exception applies, this Court does not have subject matter jurisdiction.[16] Where, as here, the plaintiff seeks default judgment in an action against a foreign government, "a special duty on the part of a federal court to carefully scrutinize the plaintiff's claim" arises.[17]

### III. Discussion

In its OSC, the Court identified the following jurisdictional problems with the Amended Complaint: (1) Plaintiff seeks a jury trial, which is not permitted under 28 U.S.C. § 1330; and (2) there is no indication that one of the FSIA exceptions to foreign sovereign immunity applies here.[18] In his response to the OSC, Plaintiff waives his right to jury trial, which resolves the first issue the Court identified. Liberally construing Plaintiff's pro se response, as the Court must,[19] he argues that the tortious activity, existing-treaty, and terrorism exceptions to foreign sovereign immunity apply here.

As stated above, the FSIA establishes the rules for jurisdiction over a foreign state, and Plaintiff does not dispute that the Republic of Hungary is a "foreign state" under the Act.[20] "The Act creates a baseline presumption of immunity from suit. '[U]nless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state.'"[21]

---

[15] *Villoldo v. Republic of Cuba*, 659 F. Supp. 3d 1158, 1170 (D. Colo. 2023) (quoting *Vera v. Republic of Cuba*, 867 F.3d 310, 316 (2d Cir. 2017)).

[16] *Vera*, 867 F.3d at 316.

[17] *Villoldo*, 659 F. Supp. 3d at 1171 (quoting *Sullivan v. Republic of Cuba*, 289 F. Supp. 3d 231, 242 (D. Me. 2017), *aff'd*, 891 F.3d 6 (1st Cir. 2018)).

[18] *See* 28 U.S.C. §§ 1605–1607.

[19] *See Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[20] *See* 28 U.S.C. § 1603(a)–(b).

[21] *Fed. Republic of Germany v. Philipp*, 592 U.S. 169, 176 (2021) (alteration in original) (citation omitted) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)).

Below, the Court considers each of the FSIA exceptions identified by Plaintiff and concludes that they do not apply here.

### A. Tortious Activity Exception

First, Plaintiff asserts that the tortious activity exception applies. That exception allows jurisdiction where:

> [M]oney damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to—
>
> > (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or
> >
> > (B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights . . . .[22]

The Supreme Court has explained that this exception "is limited by its terms . . . to those cases in which the damage to or loss of property occurs in the United States."[23]

Plaintiff's allegations in the exhibits attached to his Amended Complaint demonstrate that his injury occurred in Hungary, where Plaintiff's son was allegedly taken from him, not in the United States. Moreover, any allegation that Hungarian officials acted without jurisdiction in rendering a custodial decision would be exempt from the tortious-activity exception under § 1605(a)(5)(A). Likewise, Plaintiff's allegation that he was subject to wrongful criminal convictions in Hungary would be subject to the malicious prosecution and abuse of process exemptions in subparagraph (B).

---

[22] 28 U.S.C. § 1605(a)(5).

[23] *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439–40 (1989) (emphasis omitted).

Plaintiff cites *Villoldo v. Republic of Cuba*[24] and *Vera v. Republic of Cuba*[25] for the proposition that foreign states are "not immune under the FSIA when their actions directly caused harm to U.S.-based individuals."[26] But Plaintiff misreads these cases. *Villoldo* and *Vera* considered only one exception to foreign sovereign immunity—the state-sponsored acts of terrorism exception.[27] These cases neither considered nor applied the tortious-activity exception. This Court does not have subject matter jurisdiction under the tortious activity exception to the FSIA because Plaintiff's injury occurred in Hungary, and because the discretionary function or malicious-prosecution exemptions to this exception would apply.

### B.   Existing-Treaty Exception

Next, Plaintiff claims that the Court has jurisdiction because his claims arise under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention").[28] 28 U.S.C. § 1604 provides that foreign sovereign immunity is "[s]ubject to existing international agreements to which the United States is a party at the time of enactment of [the FSIA]." As the Supreme Court has explained, "[t]his exception applies when international agreements 'expressly conflic[t]' with the immunity provisions of the FSIA," and does not apply if the treaty does not create a private right of action in the United States.[29]

---

[24] 659 F. Supp. 3d 1158, 1170 (D. Colo. 2023).

[25] 867 F.3d 310, 316 (2d Cir. 2017).

[26] Doc. 13 at 1.

[27] *See* 28 U.S.C. § 1605A; *Vera*, 867 F.3d at 316 ("The only exception urged in this case is for state-sponsored acts of terrorism."); *Villoldo*, 659 F. Supp. 3d at 1171–83 (considering only the FSIA's terrorism exception).

[28] Oct. 25, 1980, T.I.A.S. No. 11670, 22514 U.N.T.S. 98 [hereinafter Hague Convention].

[29] *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 442 (alteration in original) (1989).

The Hague Convention is a multilateral treaty adopted "[t]o address 'the problem of international child abductions during domestic disputes.'"[30] Congress passed the International Child Abduction Remedies Act ("ICARA") after it ratified the Hague Convention, which implements the Convention.[31] The Court cannot construe Plaintiff's Amended Complaint as a petition under the Hague Convention. There is no domestic dispute at issue in Plaintiff's Amended Complaint. And under Article 12 of the Hague Convention, if "a court determines a child has been wrongfully removed . . . the child is to be returned 'forthwith,' as long as the proceedings have been 'commenced' in the 'judicial or administrative authority of the Contracting State where the child is' less than one year before the date of wrongful removal."[32] Plaintiff alleges in the Amended Complaint and elsewhere that his son was wrongfully taken in Hungary, and that he has been there for seven years. Thus, under the Treaty, Plaintiff was required to seek relief in Hungary, not in the United States, and there is no conflict between any immunity provisions in the Hague Convention and the FSIA.

### C. Terrorism Exception

Finally, Plaintiff references in his Amended Complaint human rights abuses, terror, and persecution in Hungary. He argues in his response to the OSC that these facts confer jurisdiction on the Court. The Court liberally construes this argument as invoking the terrorism exception to the FSIA under 28 U.S.C. § 1605A. But this exception does not apply because it requires that

---

[30] *Lozano v. Montoya Alvarez*, 572 U.S. 1, 4 (2014) (emphasis omitted) (quoting *Abbott v. Abbott*, 560 U.S. 1, 8 (2010)).

[31] *Id.*; *see* 22 U.S.C. §§ 9001–9011.

[32] *Monzon v. De La Roca*, 910 F.3d 92, 96 (3d Cir. 2018) (citing Hague Convention, art. 12); *see also* 22 U.S.C. § 9003(b) ("Any person seeking to initiate judicial proceedings under the Convention for the return of a child or for arrangements for organizing or securing the effective exercise of rights of access to a child may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction *in the place where the child is located at the time the petition is filed*." (emphasis added)).

the foreign state be designated as a state sponsor of terrorism.[33] The Republic of Hungary is not.[34] Therefore, this exception cannot apply.

In sum, the Court finds that the Republic of Hungary is immune from suit as a foreign state, and therefore the Court lacks subject matter jurisdiction over this action. Because the Court lacks jurisdiction, it must deny Plaintiff's motion for default judgment.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff Laszlo Korpas's Motion for Default Judgment (Doc. 7) is **denied**; his Motion for Leave to File Exhibits Conventionally (Doc. 10) is therefore **moot**. This case is hereby dismissed for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

Dated: November 21, 2024

                                                    S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[33] *See, e.g.*, *Villoldo v. Republic of Cuba*, 659 F. Supp. 3d 1158, 1171–72 (D. Colo. 2023).

[34] *See* 28 U.S.C. § 1605A(h)(6) (stating that "state sponsor of terrorism" requires designation by the Secretary of State); *Bureau of Counterterrorism, State Sponsors of Terrorism, U.S. Dep't of State*, https://www.state.gov/state-sponsors-of-terrorism/ (last visited Nov. 18, 2024) (listing Cuba, North Korea, Iran, and Syria).